UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

No. 1:26-cv-0100

**Intellectual Ventures I LLC, et al.,**
*Plaintiffs,*
v.
**United Parcel Service, Inc.,**
*Defendant.*

## MEMORANDUM OPINION AND ORDER

Defendant United Parcel Service, Inc. ("UPS") moved to transfer this case to the Northern District of Georgia. Plaintiffs Intellectual Ventures I LLC and Intellectual Ventures II LLC (collectively, "Intellectual Ventures") oppose the transfer. The Court agrees with UPS that transfer is appropriate. The motion to transfer is thus granted and the case is transferred to the Northern District of Georgia.

## BACKGROUND

Intellectual Ventures filed suit against UPS in Austin, Texas. Intellectual Ventures I and Intellectual Ventures II are managed by Intellectual Ventures Management, LLC. ECF No. 1 at ¶ 11 ("Compl."). Intellectual Ventures alleges that Intellectual Ventures Management "fosters inventions and facilitates the filing of patent applications for those inventions, collaborates with others to develop and patent inventions, and acquires and licenses patents[.]" *Id.* Intellectual Ventures asserts that these patents "includ[e] many pertaining to the networking and computing technologies that form the foundation of the Internet." *Id.* at ¶ 13.

Intellectual Ventures asserts five patents against UPS: U.S. Patent No. 7,199,715 (the "'715 Patent"), U.S. Patent No. 7,336,176 (the "'176 Patent"), U.S. Patent No. 7,623,439 (the "'439 Patent"), U.S. Patent No. 8,594,122 (the "'122 Patent"), U.S. Patent No. 11,363,564 (the "'564 Patent") (collectively, the "Asserted Patents"). *Id.* at p. 1. Intellectual Ventures alleges that several UPS systems and products infringe these patents: the Digital Twins Platform, the Smart Package Smart Facility solution, the UPS Premier product features, and DIAD mobile devices with wireless networking functionality (collectively, the "Accused Products").

UPS is headquartered in the Northern District of Georgia and seeks to transfer this case there. Intellectual Ventures I and Intellectual Ventures II are Delaware limited liability companies based in Bellevue, Washington. The sole ties any party has with this district are UPS's regional distribution centers and stores, which are not connected to the development and design of the Accused Products.

Intellectual Ventures II has also filed a second, co-pending suit against UPS in Austin. *See* Amended Complaint, *Intellectual Ventures II LLC v. United Parcel Service, Inc.*, No. 1:26-cv-1150 (W.D. Tex. July 31, 2026), ECF No. 19. UPS contends that this co-pending suit should also be transferred to the Northern District of Georgia. However, the co-pending suit involves different patents and different accused products, and, aside from sharing some parties, is unrelated to this case.

In short, aside from co-pending litigation and UPS's nationwide distribution centers and stores, next to nothing links this litigation to this District.

## LEGAL STANDARD

Section 1404(a) of Title 28 of the U.S. Code states that "a district court may transfer any civil action to any other district

or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

Applying this statutory language, the first step in analyzing a section 1404(a) transfer motion is to determine whether the case "'might have been brought' in the destination venue[,]" *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (en banc), or the parties consented to that venue, *In re Rolls Royce Corp.*, 775 F.3d 671, 680 n.42 (5th Cir. 2014).

If either threshold condition is satisfied, then the Court proceeds to a second step: it must determine whether transfer is appropriate by balancing the same private and public interests that it balances when deciding whether to dismiss in favor of a non-federal forum under the *forum non conveniens* doctrine. *See Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 60–61 (2013) ("[Section] 1404(a) and the *forum non conveniens* doctrine from which it derives entail the same balancing-of-interests standard[.]").

The four private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen*, 545 F.3d at 315 (citation omitted). The four public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* (citation omitted and alteration in original). These factors are "not necessarily exhaustive or exclusive." *Id.*

For a case to be transferred, the moving party must show "good cause"—i.e., that "its chosen venue is clearly more convenient." *In re Chamber of Com. of U.S. of Am.*, 105 F.4th 297, 303–04 (5th Cir. 2024). This standard stems from the pre-existing "presumption in favor" of a plaintiff's desired forum. *Humble Oil & Refin. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963). It is a lesser showing than that required for dismissal under *forum non conveniens*. *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955).

## ANALYSIS

The Northern District of Georgia is clearly more convenient than the Western District of Texas. Intellectual Ventures has no apparent connection to the Western District of Texas, no significant witnesses are in the Western District of Texas, and no accused infringement is unique to the Western District of Texas.

### I. Intellectual Ventures' choice of forum is entitled to diminished weight.

"Courts generally give deference to the plaintiff's choice of forum. But that deference is diminished when the chosen forum is neither the plaintiff's home forum nor the forum in which the conduct underlying the plaintiff's cause of action occurred." *Velos Media, LLC v. ByteDance Ltd.*, No. 1:25-cv-967, 2026 WL 3148441, at *3 (W.D. Tex. Sept. 22, 2026); *see also Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) (stating that the presumption that choice of forum is convenient and appropriate applies with "less force" when it is not the plaintiff's home forum); *Rimkus Consulting Grp., Inc. v. Balentine*, 693 F. Supp. 2d 681, 690 (S.D. Tex. 2010) ("[W]hen a plaintiff is not a resident of the chosen forum, or when the operative facts underlying the case did not occur in

the chosen forum, a court gives less deference to a plaintiff's choice.").

That is the case here. Intellectual Ventures I and Intellectual Ventures II are Delaware limited liability companies that share a principal place of business in Bellevue, Washington. The scope of the allegedly infringing activity is nationwide and has no unique basis in the Western District of Texas. Nor does the design and manufacture of the Accused Products occur in the Western District of Texas. The Court thus gives diminished weight to Intellectual Ventures' decision to litigate this case in the Western District of Texas. *See Avalos v. Chavez*, No. 1:17-cv-494-LY, 2017 WL 11717683, at *1 (W.D. Tex. Aug. 4, 2017) ("Because [plaintiff] neither resides in nor works in the Austin Division of the Western District of Texas, her choice to litigate [her] claims in this division of the Western District is not entitled to such deference.").

## II. The balance of interests favors transfer to the Northern District of Georgia.

Because no party disputes that this suit could have been filed in the Northern District of Georgia—nor could they, as UPS's worldwide headquarters is in that district, *see* 28 U.S.C. § 1400(b)—the Court turns to balancing the private and public interest factors. Here, both the private and public factors demonstrate that the Northern District of Georgia is a clearly more convenient forum than this District.

### A. The private interest factors favor transfer

Three of the private interest factors—cost of attendance for willing witnesses, ease of access to sources of proof, and availability of compulsory process—weigh in favor of transfer to the Northern District of Georgia. The remaining private interest factor, all other practical problems, is neutral.

**1. Cost of attendance for willing witnesses**

The cost of attendance for willing witnesses favors transfer. The Fifth Circuit uses a 100-mile benchmark when assessing this factor. *In re Volkswagen*, 545 F.3d at 317. When travel to the venue exceeds 100 miles, "the factor of inconvenience to the witnesses increases in direct relationship to the additional distance to be traveled." *In re TikTok, Inc.*, 85 F.4th 352, 361 (5th Cir. 2023) (citation omitted). This is because "it is more convenient for witnesses to testify at home, and additional distance means additional travel time, meal and lodging expenses, *and* time witnesses must be away from their regular employment." *Id.* (cleaned up and emphasis added).

UPS has identified 15 individuals who are likely party witnesses, including 14 UPS employees and one Intellectual Ventures executive. *See* ECF No. 34-1. Of the witnesses identified by UPS, seven are located in the Northern District of Georgia, and another seven are located on the East Coast. Only one party witness that UPS identifies is closer to the Western District of Texas than the Northern District of Georgia, and that witness is located in Bellevue, Washington.

Intellectual Ventures contends two additional UPS employees are likely key witnesses. *See* ECF No. 51, at 11–12. These witnesses are both located in Texas, but neither is located near this Court. ECF No. 55, at 7. One is in Fort Worth, which is in the Northern District of Texas. The other is in El Paso, which is in the Western District of Texas. But being in the same district is of minor importance because El Paso is roughly as far from Austin as Wichita, Kansas. So, regardless of whether this litigation proceeds in the Northern District of Georgia or the Western District of Texas, both of these possible witnesses would still have to travel away from their homes and regular employment to provide testimony.

In any event, these witnesses may be superfluous. Neither Texas witness contributed to the design or development of the accused systems. *See* ECF No. 34-4, ¶¶ 18–20. Their experience is instead in training others how to use the at-issue products. And UPS has identified several employees closer to the Northern District of Georgia than the Western District of Texas that UPS contends are better positioned to provide relevant information. For example, Derek Uber, who lives in New Jersey, is a UPS employee responsible for interfacing between the engineering team and the Texas witnesses' team. UPS has also identified Caleeann Blarr, a project manager for UPS in Erie, PA, as the lead for creating documents for the Texas witnesses' team.

Intellectual Ventures offers to reimburse travel expenses of UPS's Georgia-based corporate witnesses in an effort to minimize inconvenience. But travelling witnesses "suffer 'personal costs associated with being away from work, family, and community' when they testify far from home." *In re TikTok*, 85 F.4th at 361 (quoting *In re Volkswagen*, 545 F.3d at 317). Proceeding in the Western District of Texas would impose these personal costs not only on UPS's Georgia-based corporate witnesses, but also UPS's Texas-based witnesses who would have to travel to Austin to testify. Therefore, even considering a reduced financial burden on willing witnesses, the greater number of party witnesses in the Northern District of Georgia tips this factor in favor of transfer.

#### 2. Availability of compulsory process

The availability of compulsory process supports transfer. This factor supports transfer when non-party witnesses are "outside the [] District's subpoena power" and "a proper venue that does enjoy *absolute* subpoena power for both depositions and trial . . . is available." *In re Volkswagen*, 545 F.3d

at 316 (citation omitted and emphasis in original). Under Federal Rule of Civil Procedure 45, a court may "command a person to attend a trial, hearing, or deposition . . . within 100 miles of where the person resides, is employed, or regularly transacts business in person[] *or* within the state where the person resides, is employed, or regularly transacts business in person, if . . . [he] is commanded to attend a trial and would not incur substantial expense." FED. R. CIV. P. 45(c)(1) (emphasis added). "[T]he availability of compulsory process receives less weight when it has not been alleged or shown that any witness would be unwilling to testify." *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630–31 (5th Cir. 2022) (citation and internal quotation marks omitted).

UPS has identified several third-party witnesses within the Northern District of Georgia, including a former employee and an inventor. ECF No. 34, at 9–10. Although the remaining inventors are distributed across the United States and overseas, none are located within this District's subpoena power. UPS has also identified the Roswell, Georgia office of Kimberly-Clark Worldwide, the original assignee of the '715 Patent, as a potential source for relevant witnesses.

Additionally, UPS has identified third-party prior art witnesses in the Northern District of Georgia. Even if these prior art witnesses may not testify, they must be considered when weighing this factor. *WAG Acquisition, L.L.C. v. Google LLC*, No. 6-21-cv-816-ADA, 2022 WL 9569437, at *5 (W.D. Tex. Oct. 5, 2022) (citing *In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *3 (Fed. Cir. Aug. 2, 2021)). "That does not mean prior art witnesses have the *same* weight as other witnesses who are likely to testify or play a large role in the case, but they nonetheless carry some weight." *Velos Media*, 2026 WL 3148441, at *5.

UPS has not alleged or shown that any of these witnesses are unwilling to testify, and therefore this factor is accorded less weight. *In re Planned Parenthood*, 52 F.4th at 630–31. UPS contends, based on *In re HP Inc.*, that any such allegation or showing is unnecessary, and argues that there is a presumption of unwillingness "when there is no indication that a non-party witness is willing." No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018). Although *In re HP Inc.* spun off a line of cases adopting this presumption, these cases "precede recent opinions handed down by the Fifth Circuit in *Planned Parenthood* and *In re TikTok* that held this factor 'receives less weight when it has not been alleged or shown that any witness would be unwilling to testify.'" *Resonant Sys., Inc. v. Apple, Inc.*, No. 7:23-cv-77-ADA, 2024 WL 4346391, at *7 (W.D. Tex. Apr. 18, 2024) (quoting *In re TikTok*, 85 F.4th at 360).

Neither party contends that the Western District of Texas is home to any relevant third-party witnesses. As the only identified potential third-party witnesses are located outside the Western District of Texas, and because the most important of those identified witnesses are in the Northern District of Georgia, this factor supports transfer, albeit with reduced weight in accordance with *Planned Parenthood*.

**3. Ease of access to sources of proof**

The ease of access to sources of proof weighs slightly in favor of transfer. This private interest factor centers on "the location of 'documents and physical evidence relating to the [case].'" *In re TikTok*, 85 F.4th at 358 (quoting *In re Volkswagen*, 545 F.3d at 316) (alteration in original). "[T]he question is *relative* ease of access, not *absolute* ease of access." *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013) (per curiam). And if the current district lacks any evidence relating to the case, this factor weighs in favor of transfer. *See Volkswagen*, 545 F.3d at

316. The relative weight, however, lessens if "the vast majority of the evidence is electronic, and therefore equally accessible in either forum[.]" *In re TikTok*, 85 F.4th at 358–59 (cleaned up). Witnesses are not "sources of proof" for purposes of this first factor. *See In re Apple Inc.*, 979 F.3d 1332, 1339–40 (Fed. Cir. 2020) (applying Fifth Circuit law and finding legal error when the district court considered witnesses as "sources of proof").

For patent infringement suits, "the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (citation omitted). That is because "the bulk of the relevant evidence usually comes from the accused infringer." *Id.* But here, as in *TikTok*, where the defendant's "source code is the most important evidence in this case," the primary question is not simply where the code is kept, but where the code can be accessed. 85 F.4th at 359. This is because "only a select few individuals have access" to the source code, and that access is not defined by proximity to the servers hosting the code. *TikTok*, 85 F.4th at 359 n.6As the Fifth Circuit put it, because "[t]he non-witness evidence 'travels' with the employees who have the needed security clearance. . . . the location of those individuals necessarily bears on which forum has relative ease of access to sources of proof." *Id.*

The employees that control server access are primarily in Georgia, Maryland, and New Jersey. It is thus relatively easier to access UPS's source code and technical documentation in the Northern District of Georgia, where some of those employees are located, than it is in the Western District of Texas.

**4. All other practical problems**

As a sort of catchall, courts must consider "all other practical problems that make trial of a case easy, expeditious[,] and inexpensive." *In re Volkswagen*, 545 F.3d at 315 (citation

and internal quotation marks omitted). Here, these problems are neutral.

This case is in its infancy, and the Court has not developed familiarity or experience with the Asserted Patents. Although one of the patents in this case, the ’439 Patent, has been asserted in this District, this Court does not have prior experience with this patent. A court in the Northern District of Georgia will have equal access to the record of those proceedings and will be able to adjudicate this case with the same ease and efficiency as this Court.

To the extent that judicial economy would be improved by retaining this suit in this District alongside co-pending cases filed by Intellectual Ventures, “the incremental gains in keeping [this case] in the Western District of Texas simply are not sufficient to justify overriding the inconvenience to the parties and witnesses.” *In re Samsung Elecs. Co., Ltd.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021). The other cases filed by Intellectual Ventures accuse different products and will likely “result in significantly different discovery, evidence, proceedings, and trial.” *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1382 (Fed. Cir. 2010).

**B. No public interest factor weighs against transfer**

Regardless of the result of the private-factor analysis, this Court must consider public-interest factors. *Atl. Marine*, 571 U.S. at 62. These factors include: “(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.” *In re Volkswagen*, 545 F.3d at 315 (citation omitted and alteration in original). The second of these factors weighs in favor of transfer, while the rest are

neutral. Thus, on balance, the public interest factors slightly favor transfer to the Northern District of Georgia.

The first public interest factor is neutral. The Fifth Circuit has observed that "to the extent docket efficiency can be reliably estimated, the district court is better placed to do so than this court." *In re Planned Parenthood*, 52 F.4th at 631. And while hypothesizing about timing can sometimes be "speculative," *In re Genentech*, 566 F.3d at 1347, from the evidence proffered by the parties it appears that time to trial was slightly faster in the Northern District of Georgia when compared to this District. However, any potential difference in resolution speed is discounted, because Intellectual Ventures, "is not engaged in product competition in the marketplace and is not threatened in the market in a way that, in other patent cases, might add urgency to case resolution and give some significance to the time-to-trial difference." *In re Google LLC*, 58 F.4th 1379, 1383 (Fed. Cir. 2023).

As for the second public interest factor, the Court must analyze the forum's "connections with the events that gave rise to th[e] suit"—not simply generalized connections to the forum. *In re Volkswagen*, 545 F.3d at 318. The Northern District of Georgia has significantly stronger connections to this suit than the Western District of Texas. For example, much of the design and development of the Accused Products appears to have occurred in the Northern District of Georgia. *See, e.g.*, *In re Samsung Elecs.*, 2 F.4th at 1380 (holding that research, design, and development are "significant factors" that make the infringement suit a matter of local concern).

The third public interest factor—familiarity of the potential forum with the relevant law—is neutral. This factor "commonly applies where the destination venue is in a different State—in which case that State's familiarity with the applicable law would be especially probative to the transfer

analysis." *In re Planned Parenthood*, 52 F.4th at 632 n.5. So, this Court looks to the law the district court must apply. The claims do not implicate any state law, making this factor neutral for transfer purposes.

The last public interest factor seeks to avoid "unnecessary problems of conflict of laws [or in] the application of foreign law." *In re Volkswagen*, 545 F.3d at 315 (alteration in original). The claims at issue in this case are solely federal law claims. Thus, this factor is also neutral for transfer purposes.

## CONCLUSION

The motion to transfer is GRANTED. ECF No. 34. The Court directs the Clerk of Court to transfer this case to the U.S. District Court for the Northern District of Georgia.

*So ordered by the Court on October 23, 2026.*

ANDREW DAVIS
United States District Judge